UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**EVELYN PEREZ, as next friend of minor F.V.**

    **Plaintiff,**

v.                                                           Case No: 5:19-cv-661-Oc-30PRL

**LAKE COUNTY ROWING ASSOCIATION and THE CITY OF CLERMONT, FLORIDA,**

    **Defendants.**

## REPORT AND RECOMMENDATION[1]

Evelyn Perez brought this action for disability discrimination on behalf of her autistic grandson, F.V. against the Lake County Rowing Association (LCRA) and the City of Clermont. While LCRA answered the complaint (Doc. 6), the City of Clermont filed the instant motion to dismiss (Doc. 8) arguing that Plaintiff has failed to allege any basis for holding the City of Clermont responsible for the alleged discrimination. As discussed below, the Court disagrees and recommends that the motion to dismiss be denied.

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

I.  **BACKGROUND**[2]

LCRA provides rowing instruction, competitions, and after school programs at the Clermont Boathouse, which is owned by the City of Clermont. Plaintiff alleges that the City of Clermont either donates or rents its boathouse to LCRA.

In July 2018, F.V. attended LCRA's summer rowing camp held at the City of Clermont boathouse. It was held five (5) days a week, for three (3) weeks. Coaches told Ms. Perez that F.V. followed commands and was doing well. On the last day of rowing camp, Ms. Perez spoke to a coach about registering F.V. for the afterschool rowing program, also offered at the City of Clermont boathouse, two (2) days per week. The coach told Ms. Perez that F.V. was not "competition material" and that "the kids were afraid of him," so he could not attend the program.

On approximately August 6, 2018, Ms. Perez filed an ADA Complaint with the City of Clermont. The City of Clermont responded and brought in LCRA to help respond. On October 12, 2018, a meeting was held with the Perez family and representatives of LCRA, but the City of Clermont did not attend claiming that the alleged discriminatory actions did not involve the City. During the meeting, LCRA representatives stated that F.V could not attend the rowing program until there was a separate program, and a special needs coach to be with F.V.

On October 19, 2018, MJ Coleman, President of LCRA sent an email to Ms. Perez offering F.V. segregated lessons, two days a week, with a rowing coach who works part-time as a middle school coach, and that they were working on having "the right kind of boat." Plaintiff argues that Defendants' accommodation was to segregate F.V. based on his disabilities, which defeated the

---

[2] The background "facts" are taken from the Complaint (Doc. 1) and taken as true for purposes of this motion to dismiss.

purpose of the rowing team with his peers, and instead required him to row alone with an adult coach.

Accordingly, Plaintiff filed this action against the LCRA and the City of Clermont for disability discrimination pursuant to Titles II and III of the Americans with Disabilities Act, 42 U.S.C. §§12181, et seq. ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Plaintiff alleges that Defendants failed to accommodate F.V.'s disability and denied him full and equal enjoyment of Defendants' services, facilities, and privileges; and Defendants failed to make reasonable modifications in policies, practices, procedures, failed to train personnel to work effectively with persons with a disability and segregated F.V. based on his autism. LCRA filed an answer (Doc. 6) and the City of Clermont filed the instant motion to dismiss.

II. **STANDARD**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). In considering the sufficiency of the complaint, the court limits its "consideration to

the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.*

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Ashcroft* and *Twombly*. First, "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949). In applying these principles, the Court can infer "'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 129 S.Ct. at 1951-52).

III.    **DISCUSSION**

At issue here, are Plaintiff's claims against the City of Clermont brought pursuant to Title II of the ADA and the Rehabilitation Act. The City of Clermont has moved to dismiss both claims for the same reason—i.e., that Plaintiff has failed to sufficiently allege a basis to hold the City responsible for the alleged discrimination.

Title II of the ADA prohibits discrimination on the basis of disability in all of a public entity's "services, programs, and activities." *Id.* § 12132;  28 C.F.R. § 35.130(a). Section 504 of the Rehabilitation Act similarly prohibits such discrimination by entities that receive federal financial assistance. 29 U.S.C. § 794.  Given the textual similarities between the two statutes, "the same standards govern" claims under both, and we "rel[y] on cases construing [**Title II** and § 504] interchangeably." *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1133 (11th Cir. 2019) (*quoting T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010)).

To state a claim under Title II of the ADA or § 504, Plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability. *Silberman,* 927 F.3d at 1134. Here, the City of Clermont does not challenge (for purposes of this motion to dismiss) that Plaintiff is a qualified individual or that he has been denied the full or equal benefit of a program based on his disability. Instead, the City argues that Plaintiff has not, and cannot, establish that any denial was done by a public entity, i.e., the City of Clermont. *See* Doc. 8 at 3.

As alleged, Plaintiff's theory of liability is based on the City of Clermont's status as owner/lessor of the Clermont Boathouse. Courts have held that "a public entity, leasing or renting out its facilities to non-public entities, is subject to Title II of the ADA because it is considered to be a landlord." *Association for Disabled Americans, et al., v. City of Orlando,* 153 F.Supp.2d 1310, 1318 (M.D. Fla. 2001), *quoting Levy v. Mote,* 104 F.Supp.2d 538, 543 (D. Md. 2000) and *Johnson v. Saline,* 151 F.3d 564, 571 (6th Cir.1998). *See also Schutza v. City of San Diego, et al.,* No. 3:13-cv-2992-CAB, 2016 WL 11621283, at *4 (S.D. Calif. June 29, 2016) (fact that private entity controls and manages public accommodation "does not excuse the City [landlord] of its obligation to ensure that it is operated in a manner that enables the City to meet its Title II obligations;" and noting that Ninth Circuit has advised that "in a case in which the property owner is a public entity and the operator of the public accommodation is a private entity, it will be in the plaintiff's best interest to sue both the landlord, under Title II, and the operator of the public accommodation, under Title III, thereby affording the court the greatest flexibility in fashioning appropriate relief.").

In *Assoc. of Disabled Americans, et al v. City of Orlando*, 153 F.Supp.2d 1310 (M.D. Fla. July 30, 2001), a disabled advocacy nonprofit corporation sued the City of Orlando alleging that the City was in violation of Title II of the ADA because the Bob Carr Performing Arts Centre and the Orlando Arena were inaccessible and unusable by individuals with disabilities. The Court rejected the City's argument that it was not responsible for Title II violations because it had little control over the programs presented at both facilities:

> It is true that the City appears to have little control over the programs presented at the facilities. This fact does not, however, immunize the City from suit under Title II of the ADA. Several courts have held that "a public entity, leasing or renting out its facilities to non-public entities, is subject to Title II of the ADA because it is considered to be a landlord." *Levy v. Mote,* 104 F.Supp.2d 538, 543 (D.Md.2000); *Johnson v. Saline,* 151 F.3d 564, 571 (6th Cir.1998). Therefore, the fact that the City contracts with various presenters and promoters but does not present programs itself is irrelevant. Because the City acts as a landlord of sorts, it may be held liable for potential ADA violations at either facility.

Here, based on Plaintiff's allegation that the City of Clermont owns the Clermont Boathouse and either donates or rents it to LCRA, Plaintiff has sufficiently stated a claim against the City of Clermont under Title II of the ADA and the Rehabilitation Act. *See e.g., Schutza v. City of San Diego, et al.,* No. 3:13-cv-2992-CAB, 2016 WL 11621283, at *4 (S.D. Calif. June 29, 2016) (fact that private entity controls and manages public accommodation "does not excuse the City [landlord] of its obligation to ensure that it is operated in a manner that enables the City to meet its Title II obligations.")

Accordingly, the City of Clermont's motion to dismiss (Doc. 8) should be **DENIED**.

Recommended in Ocala, Florida on March 5, 2020.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy